## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., GEICO INDEMNITY CO., GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY CO.,<br><br>          Plaintiffs,<br><br>                    v.<br><br>NINGNING HE, M.D., ADVANCED PAIN CARE, L.L.C., SASCHA QIAN, M.D., RAJIVAN MANIAM, M.D., YOUNG M. AHN, L.AC., APEX ANESTHESIA ASSOCIATES, L.C.C., JOHN LI, M.D., ANTHONY SURACE, M.D., ANI KALFAYAN, M.D., SAMUEL CARUTHERS, M.D., TIMOTHY FINLEY, M.D., SANJAY TEWARI, M.D., and LOUIS QUARTARARO, M.D.,<br><br>          Defendants. | CIVIL ACTION NO.:<br><br>**2:19-cv-09465-KM-JBC**<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**BRIEF OF DEFENDANTS, JOHN LI, M.D. AND ANTHONY SURACE, M.D., IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700
*Attorneys for Defendants,*
*John Li, M.D. and*
*Anthony Surace, M.D.*

Of Counsel:
          Keith J. Roberts, Esq.

On the Brief:
          Keith J. Roberts, Esq.
          Shannon Carroll, Esq.

BE:10379463.4/ADV122-276254

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT………………………………………………......…2

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY …………….…..3

ARGUMENT………………………………………………………………….5

STANDARD OF REVIEW………………………………………………………5

      A. MOTION TO DISMISS……………………………………………….5

      B. HEIGHTENED PLEADING REQUIREMENT OF RULE 9(B)…………………6

POINT I – PLAINTIFF FAILS TO SET FORTH A VALID FRAUD CLAIM …………….7

      A. FRAUDULENT SERVICES……………………………………………8

      B. UNBUNDLING …………………………………………………...12

POINT II – PLAINTIFF FAILED TO SET FORTH A VALID IFPA CLAIM ……………15

POINT III – GEICO FAILS TO SET FORTH A RICO CLAIM ……………………….18

POINT IV – PLAINTIFF FAILED TO PLEAD AN UNJUST ENRICHMENT CLAIM……..20

POINT V – THE COMPLAINT SHOULD BE DISMISSED AGAINST
SURACE FOR LACK OF SERVICE……………………………………………...21

CONCLUSION ………………………………………………………………22

BE:10379463.4/ADV122-276254

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
556 U.S. 662 (2009)..............................................................................................................5

Atlas Pile Driving Co. v. DiCon Fin. Co.,
886 F.2d 986 (8th Cir. 1989) ..............................................................................................8

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)..............................................................................................................5

Bright v. Westmoreland Cty.,
380 F.3d 729 (3d Cir. 2004)......................................................................................5, 17, 20

Casper v. Paine Webber Grp., Inc.,
787 F. Supp. 1480 (D.N.J. 1992) .......................................................................................18

Dow Chem. Co. v. Exxon Corp.,
30 F. Supp. 2d 673 (D.N.J. 1998) .......................................................................................9

Glessner v. Kenny,
952 F.2d 702 (3d Cir. 1991)...............................................................................................18

Gov't Employees Ins. Co. v. MLS Med. Grp. LLC, No. CIV.A. 12-7281 SRC,
2013 WL 6384652 (D.N.J. Dec. 6, 2013) ....................................................................7,16, 19

In re Ins. Brokerage Antitrust Litig.,
618 F.3d 300 (3d Cir.2010)................................................................................................19

In Re Bayside Prison,
190 F. Supp. 2d 755, 760 (D.N.J. 2002)  ...........................................................................4, 9

Inst. Inv. Group v. Avaya, Inc.,
564 F.3d 242 (3d Cir. 2009)................................................................................5, 7, 10, 11

Miranda v. Ponce Fed. Bank,
948 F.2d 41 (1st Cir. 1991)................................................................................................18

Morales v. Superior Living Prods., LLC,
398 F. App'x 812 (3d Cir. 2010) ........................................................................................7

Naporano Iron & Metal Co. v. Am. Crane Corp.,
79 F. Supp. 2d 494 (D.N.J. 1999)........................................................................................5

ii

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008)....................................................................................5

Poling v. Hovnanian Enterprises,
    99 F. Supp. 2d 502(D.N.J. 2000) ........................................................................19

Robinson v. Wingate Inns Int'l, Inc.,
    13-CV-2468 CCC, 2015 WL 4064654 (D.N.J. June 30, 2015) (Cecchi, J.) ...........5

Rothberg v. Marger,
    2013 WL 1314699 (D.N.J. Mar. 28, 2013)..........................................................19

Snyder v. Farnam Companies, Inc.,
    792 F. Supp. 2d 712 (D.N.J. 2011) ....................................................................20

United Mine Workers of America v. Gibbs,
    383 U.S. 715 (1966)............................................................................................21

U.S ex rel. Whatley v. Eastwick Coll.,
    No. CIV. 2:13-1226 WJM, 2015 WL 4487747 (D.N.J. July 23, 2015), aff'd
    sub nom. United States v. Eastwick Coll., 657 F. App'x 89 (3d Cir. 2016).........7, 8

**Statutes**

18 U.S.C. § 1961(5) ................................................................................................17

18 U.S.C. § 1962(c) ................................................................................................17

Insurance Fraud Prevention Act.......................................................................1, 5, 13

Pub. L. No. 91-452, 84 Stat. 922 (1970)..................................................................16

Racketeer Influenced and Corrupt Organizations Act .................................................1

Rule 8(a)..................................................................................................................6

Rule 9(b) ...................................................................................................4, 5, 6, 17

Rule 12 ...................................................................................................................20

Rule 12(b)(4) and (5) ...........................................................................................3, 19

Rule 12(b)(6)............................................................................................................3

**Other Authorities**

Smith, Howard, M.D., Evaluation of Intravenous Sedation on Diagnostic Spinal
    Injection Procedures.......................................................................................3, 9, 10

BE:10379463.4/ADV122-276254

## **PRELIMINARY STATEMENT**

Anthony Surace, M.D. ("Surace") and John Li, M.D. ("Li")(collectively, "Anesthesia Defendants") bring this motion to dismiss the Complaint filed by Plaintiffs Government Employees Insurance Company, Geico Indemnity Company, Geico General Insurance Company, and Geico Casualty Company (collectively "GEICO" or "Plaintiff").

The Complaint must be dismissed, because GEICO fails to set forth a claim against the Anesthesia Defendants. Plaintiff's pleading deficiencies are exacerbated by the fact that nearly all of the claims are subject to the heightened pleading standards required for a fraud claim in accordance with Federal Rule of Civil Procedure ("Rule") 9(b).

Essentially, Plaintiff provides some legal conclusions and a few threadbare allegations in an attempt to tie the Anesthesia Defendants into GEICO's trumped up reimbursement case against Advanced Pain Care, LLC ("APC") and Apex Anesthesia Associates ("Apex"). In so doing, Plaintiff generally alleges that the Anesthesia Defendants provided "fraudulent services" and unbundled anesthesia from the primary procedure codes. Tellingly, GEICO fails to identify <u>any</u> specific claims where the services provided were unnecessary or fraudulent. Further, GEICO ignores the fact that the Anesthesia Defendants did not indicate patients for the services and did not bill for those services. Similarly, GEICO tacitly acknowledges that the Anesthesia Defendants have no ownership or control in Apex, by limiting the pleading only to the fact that they performed services for Apex.

In this regard, GEICO's claims for violations of the Insurance Fraud Prevention Act ("IFPA")(Count II), violations of Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count IV and IX), aiding and abetting fraud (Count VI), common law fraud (Count X), and unjust enrichment (Count VII) must be dismissed.

2

Second, the Complaint must be dismissed against Surace for the additional reason that he was not served. Similarly, the false affidavit of service filed by GEICO must be quashed.

For these reasons, the Anesthesia Defendants' motion to dismiss should be granted in its entirety.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

On April 10, 2019, Plaintiff filed a complaint setting forth allegations of insurance fraud. (ECF 1.)

In the Complaint, the Plaintiff attempts to make fraud allegations against the Anesthesia Defendants.

Plaintiff generally alleges that the Anesthesia Defendants provided "fraudulent services" on behalf of Apex. (ECF 1 at ¶¶ 18-19.)

In addition, Plaintiff claims that pain management injections generally do not require the sedation or anesthesia provided by the Anesthesia Defendants. (Id. at ¶¶309-314.) Plaintiffs cite to Smith, Howard, M.D., Evaluation of Intravenous Sedation on Diagnostic Spinal Injection Procedures, Pain Physicians 2013 in support of this position. The article provides in pertinent part as follows:

> IV sedation analgesia is inconsistently employed across interventional pain settings. In one survey of pain practices, 46% of respondents employed IV sedation for lumbar epidural steroid injections and 53% used it for cervical epidural steroid injections Most practice guidelines discourage the routine use of sedation for interventional pain procedures. There are, however, patients who are unable to cooperate with the procedure for various reasons and for whom sedation may be indicated to control patient anxiety or apprehension and allow for safe and satisfactory conduct of the procedure/intervention. In these instances, providing appropriate sedation goes beyond being humane; it is required in order to perform the procedure safely and effectively. It has been shown

3

> that the preprocedural anxiety level correlates with the
> postprocedural level of patient comfort. One study compared the
> anxiolytic effect of midazolam and droperidol, administered prior
> to epidural catheterization, on postprocedural memories and
> comfort level between 12 and 20 hours and showed that patients
> receiving midazolam reported significantly less pain and anxiety

(Emphasis added.)

Plaintiff alleges that the Anesthesia Defendants administered anesthesia to increase billing and to give the false impression that pain management procedures needed to be performed in an ambulatory surgical center. (ECF 1 at ¶¶317.)

Plaintiff generally alleges that every instance of anesthesia provided by the Anesthesia Defendants was medically unnecessary. (Id. at ¶318.)

Finally, Plaintiff alleges that the Anesthesia Defendants inappropriately unbundled anesthesia billing. (Id. at ¶¶349-355.)

Nonetheless, GEICO admits that Apex billed for the services provided. (ECF 1 at ¶401.) This is confirmed by the actual bills, which were specifically referenced in the Complaint. See **Exhibit A** to Declaration of Shannon Carroll.[1]

Similarly, GEICO does not allege that the Anesthesia Defendants had any ownership or control over Apex.

---

[1]    Generally, where "a party presents matters outside the pleadings, the District Court must convert the Motion to Dismiss into a Motion for Summary Judgment. . . . However, in this Circuit, a District Court may also consider . . . matters incorporated into the pleadings by reference. . . matters integral to or upon which plaintiff's claim is based." In re Bayside Prison Litig., 190 F. Supp. 2d 755, 760 (D.N.J. 2002). Here, the bills were incorporated by reference into paragraph 350-353 of the Complaint.

## ARGUMENT

The Anesthesia Defendants meet the standard for a motion to dismiss pursuant to Rule 12(b)(6.)  Similarly, Surace meets the standard to dismiss based on lack of service pursuant to Rule 12(b)(4) and (5).

## STANDARD OF REVIEW

### A.    Motion to Dismiss

The legal standard for evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is settled.  To survive a motion to dismiss, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Id., at 557.

This analysis requires the Court to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), or to "conclusory allegations or legal conclusions masquerading as factual conclusions," which "will not suffice to prevent a motion to dismiss." Bright v. Westmoreland Cty., 380 F.3d 729, 735 (3d Cir. 2004) (internal citations and quotations omitted).

5

### B.     Heightened Pleading Requirements of Rule 9(b)

Rule 9(b) requires that "[P]laintiffs . . . plead the who, what, when, where and how of the alleged fraud." Inst. Inv. Group v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009); accord Robinson v. Wingate Inns Int'l, Inc., 13-CV-2468 CCC, 2015 WL 4064654, at *3 (D.N.J. June 30, 2015) (Cecchi, J.) (holding that Rule 9(b) requires plaintiffs to "inject precision or some measure of substantiation" into their fraud allegations). "Pleadings containing collectivized allegations against 'defendants' do not suffice." Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999). Undoubtedly, the strictures of Rule 9(b) are not met "where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'." Id. (internal quotations and citations omitted).

Indeed, fraud allegations must be pled "with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." U.S ex rel. Whatley v. Eastwick Coll., No. CIV. 2:13-1226 WJM, 2015 WL 4487747, at *6 (D.N.J. July 23, 2015), aff'd sub nom. United States v. Eastwick Coll., 657 F. App'x 89 (3d Cir. 2016)(internal citations and quotations omitted).

Here, GEICO fails to set forth a valid factual basis for a fraud claim pursuant to Rule 9(b). Therefore, Plaintiff fails to plead a claim for (1) violations of the IFPA (Count II) (2) violations of RICO (Count IV and IX), (3) Aiding and Abetting Fraud (Count VI), and (4) Common Law Fraud (Count X). In addition, GEICO fails to set forth a claim for unjust enrichment. (Count VII).

Finally, GEICO failed to serve Surace. Therefore, for this additional reason, the Complaint should be dismissed as to Surace and the false affidavit of service must be quashed.

BE:10379463.4/ADV122-276254

## POINT I

### PLAINTIFF FAILS TO SET FORTH A VALID FRAUD CLAIM

GEICO fails to set forth the required factual basis for a valid fraud claim against the Anesthesia Defendants.

The elevated pleading requirements of Rule 9(b) apply to nearly all of Plaintiffs' claims against the Anesthesia Defendants.  Plaintiffs' RICO claims (Counts IV and IX) are predicated on acts of fraud, so those claims are subject to the strict pleading standard of Fed. R. Civ. P. 9(b). See, e.g., Morales v. Superior Living Prods., LLC, 398 F. App'x 812, 814 (3d Cir. 2010). Plaintiffs' Insurance Fraud Prevention Act ("IFPA") Claim (Count II) is a fraud claim by definition, so it too must be plead with particularity. Gov't Employees Ins. Co. v. MLS Med. Grp. LLC, No. CIV.A. 12-7281 SRC, 2013 WL 6384652, at *8 (D.N.J. Dec. 6, 2013)(dismissing IFPA claim where Geico "failed to meet even the basic pleading requirement of Rule 8(a), much less the heightened standard applicable to fraud claims). And, of course, Rule 9(b) applies to Plaintiffs' claims for common law fraud and aiding and abetting common law fraud (Counts VI and X). Inst. Inv. Group v. Avaya, Inc., 564 F.3d 242, 253 (3d Cir. 2009).

The Complaint is entirely devoid of any substantive factual allegations supporting fraud claims against the Anesthesia Defendants.   Indeed, the time, place and substance of the defendant's alleged misconduct are absent.  See, e.g., Eastwick Coll., No. CIV. 2:13-1226 WJM, 2015 WL 4487747, at *6.  Plaintiff failed to plead illegality concerning the services provided by the Anesthesia Defendants.

In reviewing the Complaint and giving Plaintiff every benefit of the doubt, it appears that Plaintiff is attempting to argue that the Anesthesia Defendants (1) performed fraudulent

anesthesia services and (2) unbundled the billing for anesthesia.   GEICO then alleges that these actions give rise to fraud claims.

Crucially, Plaintiff falls far short of the necessary pleading requirements for these fraud claims based on either (A) fraudulent services or (B) unbundling.   See generally Inst. Inv. Group., 564 F.3d at 253.

The pleading deficiency is not accidental.   In truth, the Complaint fails to plead the allegations with particularity, because Plaintiff has no facts to support the outrageous legal conclusions that are presented, highlighting a fatal deficiency in the case.   Indeed, Plaintiffs has no personal knowledge related to any of the alleged violations.   This is the type of baseless pleading that Rule 9(b) is designed to prevent.

### A.   "Fraudulent Services"

GEICO fails to explain why the services performed by the Anesthesia Defendants were fraudulent.

Crucially, the only factual allegations arguably related to Dr. Li and Dr. Surace regarding "fraudulent services" are as follows:

> 17.  Defendant Surace resides in and is a citizen of New Jersey.[2] Surace was licensed to practice medicine in New Jersey on June 23, 2003, and purported to perform many of the Fraudulent Services at Apex Anesthesia.
>
> 18.  Defendant Li resides in and is a citizen of New Jersey.  Li was licensed to practice medicine in New Jersey on June 7, 2005, and purported to perform many of the Fraudulent Services at Apex Anesthesia.
>
> . . .

### 1. The Medically Unnecessary Anesthesia Services

---

[2]      As explained in the Surace Declaration, this is inaccurate.  Surace is not a resident of New Jersey.

308.  In the claims identified in Exhibit "1", the pain management injections purportedly provided by He, Qian, Maniam, and Advanced Pain Care were <u>virtually always</u> administered using anesthesia, specifically sedation.

309.  In a legitimate clinical setting, pain management injections such as epidural injections and facet injections <u>generally do not require sedation.</u>

310.  Indeed, according to a review of the literature published in Pain Physician, the official journal of the American Society of Interventional Pain Physicians, "[m]ost practice guidelines discourage the routine use of sedation for interventional pain procedures." <u>See</u> Smith, Howard, M.D., <u>Evaluation of Intravenous Sedation on Diagnostic Spinal Injection Procedures</u>, Pain Physician 2013.[3]

311.  Along similar lines, the American Society of Anesthesiologists has specified that "the majority of minor pain procedures, under most routine circumstances, <u>do not require anesthesia care</u> other than local anesthesia. Such procedures include epidural steroid injections, epidural blood patch, trigger point injections, sacroiliac joint injections, bursal injections, and occipital nerve block and facet injections." See American Society of Anesthesiologists, "Statement on Anesthetic Care during Interventional Pain Procedures for Adults", October 20, 2010.

312.  Sedation generally is unwarranted in the context of interventional pain procedures such as pain management injections because the risk attendant to sedation outweighs any prospective benefit to the patient.

313.  Not only can sedation itself induce adverse events, including death, but patients receiving pain management injections should remain awake and alert to warn the treating physician of adverse events relating to the underlying injections.

314.  Even so, in the claims for pain management injections and anesthesia identified in Exhibits "1" and "2", Apex Anesthesia, Li, Surace, . . . – at the direction of He and Advanced Pain Care – <u>virtually always</u> purported to provide the Insureds with unjustified, medically unnecessary, and indeed dangerous sedation.

---

[3]   A copy of the article is attached to the Carroll Declaration as Exhibit B as it was specifically incorporated by reference in the complaint.  See <u>In re Bayside Prison Litig.</u>, 190 F. Supp. 2d at 760.

> 316.  Apex Anesthesia, Advanced Pain Care, He, Li, Surace, . . . were well-aware of the fact that <u>sedation generally is unwarranted</u> in the context of interventional pain procedures such as pain management injections because the risk attendant to sedation outweighs any prospective benefit to the patient.
>
> 317.  Even so, Apex Anesthesia, Li, Surace, . . . – at the direction of He and Advanced Pain Care – routinely administered sedation to the Insureds in the claims identified in Exhibits "1" and "2" in order to: (i) increase the amount of fraudulent billing that they could submit to GEICO and other insurers; and (ii) as discussed below, create the false appearance that the attendant anesthesia and interventional pain management services qualified for the ASC Exception to the Codey Law.
>
> 318.  <u>Each and every one of the anesthesia services attendant to the pain management injections that are identified in Exhibit "2" was medically unnecessary</u>, in that the anesthesia services: (i) were provided, to the extent that they were provided at all, primarily for the benefit of Apex Anesthesia, Advanced Pain Care, He, Li, Surace, . . . , <u>and not to treat or otherwise benefit the Insureds</u>; and <u>(ii) were not the most appropriate standard of level of service in accordance with standards of good practice and standard professional treatment protocols.</u>

(Emphasis added.)

Essentially, GEICO assumes that the anesthesia services were unnecessary and fraudulent based on Plaintiff's general citation to literature indicating that anesthesia may not be required. GEICO then claims -- without any specificity or explanation -- that each and every anesthesia service performed was fraudulent. (ECF 1 at ¶318.) GEICO fails to meet the pleading standard on this basis alone. <u>See</u> <u>Inst. Inv. Group</u>, 564 F.3d at 253.

Further, GEICO completely ignores the fact that a decision as to whether to perform anesthesia must be made on an individual basis.  Indeed, the very article cited by GEICO indicates as much.  Specifically, in <u>Evaluation of Intravenous Sedation on Diagnostic Spinal Injection Procedures</u>, Dr. Smith opines:

> IV sedation analgesia is inconsistently employed across interventional pain settings. In one survey of pain practices, 46%

10

of respondents employed IV sedation for lumbar epidural steroid injections and 53% used it for cervical epidural steroid injections Most practice guidelines discourage the routine use of sedation for interventional pain procedures. <u>There are, however, patients who are unable to cooperate with the procedure for various reasons and for whom sedation may be indicated to control patient anxiety or apprehension and allow for safe and satisfactory conduct of the procedure/intervention. In these instances, providing appropriate sedation goes beyond being humane; it is required in order to perform the procedure safely and effectively.</u> It has been shown that the preprocedural anxiety level correlates with the postprocedural level of patient comfort. One study compared the anxiolytic effect of midazolam and droperidol, administered prior to epidural catheterization, on postprocedural memories and comfort level between 12 and 20 hours and showed that patients receiving midazolam reported significantly less pain and anxiety

<u>See</u> **Exhibit B** to Caroll Declaration (Emphasis added.)

The Smith article actually demonstrates that providing anesthesia for anxious patients is the standard of care. <u>Id.</u> Further, the article indicates that anesthesia was used during 46% of lumbar epidural steroid injections and 53% of cervical epidural steroid injections. This demonstrates that most practitioners are using sedation for these procedures. GEICO cannot ignore these facts in an attempt to create a fraud claim.

At this stage, GEICO is tasked with presenting "who, what, when, where and how of the alleged fraud." <u>Inst. Inv. Group v. Avaya, Inc.</u>, 564 F.3d at 253. Yet, GEICO failed to plead any facts substantiating that the anesthesia services were unnecessary for <u>any specific</u> claim – let alone fraudulent.

Worse, GEICO ignores the fact that the very article on which it relies indicates that anesthesia is commonly used and is necessary in certain cases. At the very least, this required GEICO to perform an analysis of the medical records to determine whether there was a justification for the anesthesia services for each patient. GEICO failed to demonstrate that it did so.

11

Similarly, GEICO's threadbare conclusion that the anesthesia services were provided in an attempt to justify performing the procedures at an ambulatory surgery center is simply a threadbare conclusion, which cannot support GEICO's claims in this case.  See Bright, 380 F.3d at 735.

Likewise, GEICO does not allege that the Anesthesia Defendants have any ownership or control over Apex.  Therefore, Plaintiff tacitly acknowledges that these were simply regular anesthesiologists performing services for Apex.  There is, therefore, no basis to include these defendants in this fraud case.

In this regard, GEICO falls woefully short in demonstrating how the use of anesthesia for pain management procedures alone would rise to the level of a fraudulent service.  Therefore, GEICO failed to plead the alleged fraudulent conduct with the requisite particularity.

**B.      Unbundling Claim.**

GEICO fails to set forth a claim for unbundling against the Anesthesia Defendants.

The Complaint provides the following facts regarding the claim that the Anesthesia Defendants were involved in unbundling anesthesia charges:

> **E. The Fraudulent Unbundling for the Injection of Anesthetic Substances from the Underlying Charges for Anesthesia Services**
>
> 349.   Pursuant to N.J.A.C. 11:3-29.4, "[a]rtificially separating or partitioning what is inherently one total procedure into subparts that are integral to the whole for the purpose of increasing medical fees is prohibited.  Such practice is commonly referred to as 'unbundling' or 'fragmented' billing."
>
> 350.   Even so, in order to maximize their fraudulent charges for their putative anesthesia services identified in Exhibit "2", Apex Anesthesia, Advanced Pain Care, He, Li, Surace, Kalfayan, Caruthers, Finley, and Tewari virtually always: (i) purported to provide anesthesia services to Insureds, which they billed to GEICO using CPT code 01992, typically resulting in a charge of between $1,425.00 and $8,550.00; and, simultaneously (ii) billed

12

GEICO or caused GEICO to be billed an additional $800.00 under CPT codes 96374 or 96375 for the supposed injection of the anesthetics required for general sedation.

351. However, the injection of the anesthetics required for general sedation were part and parcel of the putative anesthesia services that Apex Anesthesia, Advanced Pain Care, He, Li, Surace, Kalfayan, Caruthers, Finley, and Tewari billed or caused to be billed under CPT code 01992.

352. Despite the fact that the injection of the anesthetics was part and parcel of the putative anesthesia services that Apex Anesthesia, Advanced Pain Care, He, Li, Surace, Kalfayan, Caruthers, Finley, and Tewari billed under CPT code 01992, Apex Anesthesia, Advanced Pain Care, He, Li, Surace, Kalfayan, Caruthers, Finley, and Tewari routinely unbundled the injection of the anesthetics necessary for the anesthesia services into a separate charge of $800.00 under CPT codes 96374 or 96375 in order to further increase their already-fraudulent charges for the putative anesthesia services.

353. For example:

(vii)   On February 16, 2017, Li, He, Advanced Pain Care, and Apex Anesthesia unbundled a separate charge of $800.00 for the injection of anesthetics under CPT code 96374 from a charge under CPT code 01992 for purported anesthesia services they purported to provide an Insured named RH.

(viii)   On March 4, 2017, Li, He, Advanced Pain Care, and Apex Anesthesia unbundled a separate charge of $800.00 for the injection of anesthetics under CPT code 96375 from a charge under CPT code 01992 for purported anesthesia services they purported to provide an Insured named VS.

(xviii) On October 7, 2017, Li, He, Advanced Pain Care, and Apex Anesthesia unbundled a separate charge of $800.00 for the injection of anesthetics under CPT code 96375 from a charge under CPT code 01992 for purported anesthesia services they purported to provide an Insured named BG.

(xix)   On December 2, 2017, Li, He, Advanced Pain Care, and Apex Anesthesia unbundled a separate charge of $800.00 for the injection of anesthetics under CPT code 96375 from a charge under CPT code 01992 for purported anesthesia services they purported to provide an Insured named CL.

BE:10379463.4/ADV122-276254

(xx)    On January 27, 2018, Li, He, Advanced Pain Care, and Apex Anesthesia unbundled a separate charge of $800.00 for the injection of anesthetics under CPT code 96374 from a charge under CPT code 01992 for purported anesthesia services they purported to provide an Insured named EB.

(xxii)  On March 3, 2018, Surace, He, Advanced Pain Care, and Apex Anesthesia unbundled a separate charge of $800.00 for the injection of anesthetics under CPT code 96374 from a charge under CPT code 01992 for purported anesthesia services they purported to provide an Insured named RC.

(xxiv)  On July 28, 2018, Surace, He, Advanced Pain Care, and Apex Anesthesia unbundled a separate charge of $800.00 for the injection of anesthetics under CPT code 96374 from a charge under CPT code 01992 for purported anesthesia services they purported to provide an Insured named MV.

(xxv)   On August 25, 2018, Surace, He, Advanced Pain Care, and Apex Anesthesia unbundled a separate charge of $800.00 for the injection of anesthetics under CPT code 96374 from a charge under CPT code 01992 for purported anesthesia services they purported to provide an Insured named RM.

354.    These are only representative examples. In claims for anesthesia services identified in Exhibit "2", Apex Anesthesia, Advanced Pain Care, He, Li, Surace, Kalfayan, Caruthers, Finley, and Tewari routinely unbundled the injection of the anesthetics necessary for the anesthesia services into a separate charge of $800.00 under CPT codes 96374 or 96375 in order to further increase their already-fraudulent charges for the putative anesthesia services.

355.    Each and every time that Apex Anesthesia, Advanced Pain Care, He, Li, Surace, Kalfayan, Caruthers, Finley, and Tewari unbundled the injection of the anesthetics necessary for the anesthesia services into a separate charge of $800.00 under CPT codes 96374 or 96375 in order to further increase their already-fraudulent charges for the putative anesthesia services constituted a separate violation of N.J.A.C. 11:3-29.4.

...

401.    To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted hundreds of HCFA–1500 forms and treatment reports through Advanced Pain Care and Apex Anesthesia containing hundreds of fraudulent

14

charges, seeking payment for the Fraudulent Services for which they were not entitled to receive payment.

By GEICO's own admission the bills for anesthesia services were submitted by Apex. (ECF 1 at ¶401.)  In fact, a review of the bills, which were specifically referenced in the Complaint, demonstrates that Apex billed for the services provided.  See **Exhibit A** to Carroll Declaration.  In addition, there is no allegation that the Anesthesia Defendants had any ownership or control over Apex. The Anesthesia Defendants, therefore, could not be responsible for an alleged coding issue with the billing.

As GEICO failed to plead the allegations of fraud against the Anesthesia Defendants with the requisite particularity, Count II (IFPA), Count IV and IX (RICO), Count VI (aiding and abeting fraud), Count X (common law fraud) must be dismissed.

## POINT II

## PLAINTIFF FAILED TO SET FORTH A VALID IFPA CLAIM

GEICO fails to set forth an IFPA claim against the Anesthesia Defendants.

The Insurance Fraud Prevention Act provides as follows in pertinent part:

a. A person or a practitioner violates this act if he:

(1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . , knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, . . ., or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy . . . , knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

(3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or

15

entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled.

"To reiterate, an IFPA violation requires the submission of a knowingly misleading statement in support of a claim for insurance benefits." See MLS Med. Grp. LLC, No. CIV.A. 12-7281 SRC, 2013 WL 6384652, at *8.

In MLS Medical Group, the court dismissed a similar GEICO IFPA claim based on the following analysis:

> The Amended Complaint contains no claim-specific allegation of fraud, which identifies with specificity the offending statement, why it is false or misleading and the basis for the claimant's knowledge of its alleged falseness. Here, GEICO presents no claim-by-claim analysis as to statements made in billing forms and/or treatment records, why the stated diagnosis (or corresponding CPT code) was false or exaggerated and why the treatment or electrodiagnostic test administered was medically unnecessary, as Plaintiff alleges. Instead, GEICO makes the conclusory allegation that MLS must be disgorged of $345,000 in PIP benefits because "most of the insureds whom the Defendants purport to treat have been involved in very minor accidents involving low-speed collisions or side-swipes," which, GEICO broadly asserts, do not cause long-term injuries and thus do not support the diagnoses, treatment and tests for which MLS has billed GEICO pursuant to the insureds' assigned PIP benefits. (Am.Compl., ¶ 60.) Equally unavailing for lack of specificity as to circumstances indicating fraud are GEICO's blanket assertions that the claims involve a delay between the date of the accident and treatment and that this delay, without more, demonstrates fraud.

Here, GEICO similarly makes sweeping accusations of fraudulent services based on the provision of anesthesia for pain management injections. At no point does GEICO identify an actual fraudulent claim for anesthesia. GEICO's general allegations that all anesthesia services were fraudulent does not meet the standard for a fraud claim. See MLS Med. Grp. LLC, No. CIV.A. 12-7281 SRC, 2013 WL 6384652, at *8. This is particularly true given that the scholarly article, on which GEICO relies, indicates that there are circumstances requiring the use of anesthesia for a pain management injection. See **Exhibit B** to Carroll Declaration.

16

In short, GEICO is attempting to conjure a fraud claim based on a difference of clinical opinion about the use of anesthesia for pain management injections. There is no settled case law to support GEICO's claims against the Anesthesia Defendants based on these facts. Similarly, the treatment of the patients requires an individual analysis of each case. In this regard, each claim stands on its own and a determination that the treatment of a single patient lacked medical necessity would not and could not apply to the treatment of different patients. GEICO overreached by including the Anesthesia Defendants in this case. There is no legitimate allegation of fraud.

GEICO similarly fails to maintain an IFPA violation against the Anesthesia Defendants based on the unbundling allegations. There is nothing in the Complaint that credibly alleges that the Anesthesia Defendants were involved in medical coding and billing. Conversely, the Complaint admits, and the bills confirm, that Apex Anesthesia was responsible for billing for the services. Therefore, simply alleging that eight instances of unbundling by Apex -- not the Anesthesia Defendants – does not demonstrate any misrepresentation or false statement by the Anesthesia Defendants. This is further supported by the fact that the Anesthesia Defendants have no ownership or control over Apex. As explained in Point One, these allegations fall woefully short of pleading an IFPA claim.

In addition, the claim that false statements were made *knowingly* is merely a conclusory allegation, which is insufficient to survive a motion to dismiss. Bright v. Westmoreland Cty., 380 F.3d 729, 735 (3d Cir. 2004).

In short, GEICO fell woefully short of establishing an IFPA claim against the Anesthesia Defendants necessitating dismissal.

17

## POINT III

## GEICO FAILS TO SET FORTH A RICO CLAIM

Plaintiff fails to set forth a RICO claim against the Anesthesia Defendants.

Plaintiff attempts to pull the Anesthesia Defendants into their sprawling racketeering case with vague reference to fraudulent services and the unbundling of eight anesthesia claims. Admittedly, Plaintiff is not the first litigant to seek an unwarranted tactical advantage using the "litigation equivalent of a thermonuclear device," but the Court should not entertain it. Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991).

Notably, RICO was designed to "seek the eradication of organized crime in the United States" and to "curb the infiltration of legitimate business organizations by racketeers." Pub. L. No. 91-452, 84 Stat. 922 (1970); Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 990 (8th Cir. 1989). Yet, the use of RICO has been abused as noted by one court:

> At a time when the federal courts—which are a scarce dispute resolution resource, indeed—are straining under the pressure of an ever-increasing caseload, we simply cannot tolerate this type of litigation. Particularly with regard to civil RICO claims, plaintiffs must stop and think before filing them. If used correctly, the civil RICO provisions may have many salutary effects. **When used improperly, as in this case, those provisions allow a complainant to shake down his opponent and, given the expense of defending a RICO charge, to extort a settlement.** Such improper use of the civil RICO provisions comes at the expense of the federal judiciary and those who need ready access to the courts.

Casper v. Paine Webber Grp., Inc., 787 F. Supp. 1480, 1500 n.8 (D.N.J. 1992) (emphasis added); see also Glessner v. Kenny, 952 F.2d 702, 705 (3d Cir. 1991) (Third Circuit "once again required to analyze the applicability of RICO to a claim that ordinarily would have been framed in terms of a common law action for misrepresentation or fraud").

18

Indeed, since its enactment civil RICO "has been applied to an expansive array of situations, evolving into something quite different from the original contemplation of its enactors." Dow Chem. Co. v. Exxon Corp., 30 F. Supp. 2d 673, 694 (D.N.J. 1998). That is why "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Rothberg v. Marger, 2013 WL 1314699, at *10 (D.N.J. Mar. 28, 2013) (internal citations omitted).

Yet, this Court need not address whether RICO's mutated reach has exceeded its original grasp. The focus of this motion is far more narrow. The reality is that the facts of this *particular case* as alleged against the Anesthesia Defendants do not support a RICO claim.

To set forth a proper RICO claim under 18 U.S.C. § 1962(c), a plaintiff must properly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir.2010); see also MLS Med. Grp. LLC, No. CIV.A. 12-7281 SRC, 2013 WL 6384652, at *9–11 (D.N.J. Dec. 6, 2013).

A "pattern" of racketeering activity requires the commission of at least two acts of racketeering within a ten-year period. 18 U.S.C. § 1961(5).

Where the predicate RICO acts are based in fraud – i.e. mail fraud – the fraud allegations must meet the heightened pleading requirements of Rule 9(b). See, e.g., Poling v. Hovnanian Enterprises, 99 F. Supp. 2d 502, 508(D.N.J. 2000).

Here, the alleged racketeering activity consists of mail fraud in the submission of insurance claims for allegedly medically unnecessary services. (ECF 1 at ¶429.) As explained in detail above, GEICO has not and cannot plead fraud with the requisite particularity. Indeed, as the mail fraud allegations consist only of the submission of claims to GEICO for "fraudulent

19

services" and "unbundling."   The RICO claim suffers from the same deficiencies in pleading fraud outlined in Points I and II above.

As such, Counts IV and IX should be dismissed in their entirety.

## POINT IV

## PLAINTIFF FAILS TO PLEAD AN UNJUST ENRICHMENT CLAIM

Plaintiff did not properly plead a claim for unjust enrichment.  "Generally, to claim unjust enrichment, a plaintiff must allege that (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 723–24 (D.N.J. 2011)(internal citations and quotations omitted).  "Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that 'the plaintiff allege a sufficiently direct relationship with the defendant to support the claim." Id. (internal citations and quotations).

GEICO's unjust enrichment claim fails for several reasons.   First, Plaintiff has not established a requisite loss based on anesthesia services.   Indeed, Plaintiff provides a detailed schedule of anesthesia bills and charges, but fails to identify whether it actually paid on each of those claims.  (ECF 1-2.)

Second, Plaintiff failed to establish a benefit retained by the Anesthesia Defendants. GEICO's blanket statement that the Anesthesia Defendants were enriched is a threadbare conclusion that fails to meet the basic pleading requirements. See, e.g., Bright v. Westmoreland Cty., 380 F.3d 729, 735 (3d Cir. 2004).

20

Third, Plaintiff failed to establish that it would be unjust for Plaintiff to retain the benefit for all of the reasons set forth throughout this brief.

Finally, where the federal claims are dismissed before trial, the state claims should be dismissed as well. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

As such Count VII should be dismissed in its entirety.

## POINT V

## THE COMPLAINT SHOULD BE DISMISSED AGAINST SURACE FOR LACK OF SERVICE

As set forth in the Surace Declaration, the Complaint should be dismissed pursuant to Rules 12(b)(4) and (5), because he was never actually served with the Complaint.  In addition, the false affidavit of service should be quashed.

Specifically, the affidavit of service file by GEICO indicates that Surace was served by delivery to his wife, Teresa Surace at 2191 Mackay Avenue, Apartment 2 in Fort Lee New Jersey.  In the Surace Declaration, the doctor confirmed that he does not live in New Jersey and he has never lived at the Fort Lee address.  In addition, Teresa Surace is not his wife or a member of his household.  As such, the affidavit is inaccurate and there was no such service.

Accordingly, Surace moves to quash the affidavit of service (ECF 12) and dismiss the complaint for lack of service.

21

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant the Anesthesia Defendants motion to dismiss, with prejudice, in accordance with Rule 12.

**BRACH EICHLER LLC**
*Attorneys for Defendants,*
*John Li, M.D. and Anthony Surace, M.D.*

By:   /s/ Keith J. Roberts
        KEITH J. ROBERTS

Dated:  May 21, 2019

22