UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., GEICO INDEMNITY CO., GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY CO., <br><br> Plaintiffs, <br><br> vs. <br><br> NINGNING HE, M.D., ADVANCED PAIN CARE, L.L.C., SASCHA QIAN, M.D., RAJIVAN MANIAM, M.D., YOUNG M. AHN, L.AC., APEX ANESTHESIA ASSOCIATES, L.C.C., JOHN LI, M.D., ANTHONY SURACE, M.D., ANI KALFAYAN, M.D., SAMUEL CARUTHERS, M.D., TIMOTHY FINLEY, M.D., SANJAY TEWARI, M.D., and LOUIS QUARTARARO, M.D., <br><br> Defendants. | Civ. No. 2:19-cv-09465-KM-JBC <br><br> OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "GEICO"), are automotive insurers that allege that defendants submitted or caused to be submitted hundreds of fraudulent claims for reimbursement of medical expenses. GEICO seeks to recover $5,298,000.00 that it paid to defendants. GEICO asserts eleven counts, including unjust enrichment, common law fraud, violations of the Racketeer Influenced and Corrupt Organizations Act, and

1

violations of the New Jersey Insurance Fraud Prevention Act. Defendants John Li, M.D., Anthony Surace, M.D., and Timothy Finley, M.D., now move to dismiss the complaint under Rule 12(b)(6). (DE 20, 47). Dr. Surace separately moves to dismiss for lack of proper service under Rule 12(b)(4) and 12(b)(5). (DE 20) (Herein, "defendants" refers to the movants, unless otherwise stated.)

## I. BACKGROUND[1]

Plaintiffs are automotive insurers who have sued a number of defendants to recover funds reimbursed to defendants for allegedly fraudulent medical services. The movants, defendants John Li, M.D., Anthony Surace, M.D., and Timothy Finley, M.D., are all anesthesiologists licensed to practice medicine in New Jersey. (Compl. ¶¶ 17, 18, 25). They are alleged to have performed the relevant medical services while working at co-defendant Apex Anesthesia Associates, L.C.C. ("Apex"). Apex is a New Jersey medical professional limited liability company through which defendants allegedly provided medical services and then requested and received reimbursement from GEICO. (*Id.* ¶ 4(v)). Defendant Advanced Pain Care is another New Jersey medical professional limited liability company through which many of the fraudulent services were provided and billed to insurance companies, including GEICO. (*Id.* ¶ 4(ii))

Under New Jersey law, automobile insurance policies provide benefits for personal injuries sustained in an accident involving the covered automobile, regardless of whether the driver was at fault for the accident. (*Id.* ¶¶ 36-37). This coverage is called "personal injury protection," or "PIP." (*Id.*). When Insureds receive treatment, they can assign their right to PIP benefits to their medical providers, who can then seek direct reimbursement from the insurance

---

[1] The facts are stated with inferences drawn in favor of the plaintiff on this motion to dismiss. *See* Section II, *infra*. Citations to the record are abbreviated as follows:

"DE" = Docket entry number in this case; and

"Compl." = Civil complaint [DE 1].

2

companies. (*Id.* ¶ 37). Defendants are such medical providers, *i.e.*, assignees of their patients' PIP benefits.

GEICO alleges that defendant Doctors Li, Surace, and Finley submitted, and caused to be submitted, hundreds of fraudulent no-fault insurance charges for services that were unjustified, medically unnecessary, and designed only to enrich defendants. (*Id.* ¶ 5). These services were claimed to have been provided to Insureds involved in automobile accidents who were eligible for coverage under no-fault insurance policies issued by GEICO. (*Id.* ¶ 2).

GEICO alleges that its payments to defendants were fraudulently obtained for several reasons. Defendants allegedly billed for medically unnecessary treatments, or for treatments that did not occur at all. (*Id.* ¶ 3). Treatments were allegedly provided to Insureds who had only minor accidents. (*Id.* ¶¶ 3, 85-94). In those cases, defendants followed predetermined protocols that invented diagnoses and billed for medically unnecessary treatments. (*Id.*; *see also* ¶¶ 308-18). In many cases the billing codes for services misrepresented and exaggerated the level of service provided. (*Id.* ¶¶ 349-55).

GEICO seeks to recover more than $5,298,000.00 that it paid in reliance on defendants' allegedly fraudulent billing. (*Id.* ¶ 7). GEICO's complaint asserts eleven causes of action. Of these, seven are relevant to these defendants and these motions to dismiss:

- Count 2 alleges violations of the New Jersey Insurance Fraud Prevention Act ("NJIFPA"), N.J. Stat. § 17:33A-1, *et seq.* (*Id.* ¶¶ 415-18);
- Counts 4 and 9 allege violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (*Id.* ¶¶ 426-34, 463-71);
- Count 5 alleges aiding and abetting common law fraud (*Id.* ¶¶ 442-49);
- Count 10 alleges common law fraud (*Id.* ¶¶ 472-78); and
- Counts 7 and 11 allege unjust enrichment (*Id.* ¶¶ 450-55, 479-84).

In response to GEICO's allegations, defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6). (DE 20, 47). Surace also moves for

dismissal under Rule 12(b)(4) and (5), alleging improper service. Plaintiffs oppose the motions to dismiss. (DE 35, 52).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### B. Rule 9(b)

For claims of fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a). Specifically,

4

it requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* That heightened pleading standard requires the plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotation and citation omitted).

In general, "[t]o satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* "Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal citation omitted); *see also In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." (internal quotation and citation omitted)).

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984) and citing *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983)).

## III.  DISCUSSION

Defendants argue that **(A)** GEICO's fraud claims fail for lack of specificity pursuant to Rule 9(b); **(B)** GEICO failed to adequately plead a RICO claim; **(C)** GEICO failed to plead its unjust enrichment claims. Surace separately asserts that **(D)** GEICO did not properly serve him with the summons and complaint.

### A. Pleading Fraud under Rule 9(b)

#### i. Common Law Fraud

In Counts 5 and 10, GEICO asserts claims of common law fraud and aiding and abetting fraud. (Compl. ¶¶ 442–49, 472–78). Under New Jersey law, the five elements of common law fraud are: "**(1)** a material misrepresentation of a presently existing or past fact; **(2)** knowledge or belief by the defendant of its falsity; **(3)** an intention that the other person rely on it; **(4)** reasonable reliance thereon by the other person; and **(5)** resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997); *see Frederico*, 507 F.3d at 200; *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013).

Defendants argue that GEICO fails to plead fraud with particularity under Rule 9(b). (DE 20 at 10–18; DE 47-1 at 9–17). As outlined in more detail above, a plaintiff alleging fraud "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. "[A] party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017).

GEICO alleges two main theories of common law fraud. First, GEICO alleges that defendants submitted false claims—i.e., billed for services that were not medically necessary, or that were not actually provided at all. (Compl. ¶¶ 308–18) Second, GEICO claims that defendants artificially inflated their bills by "unbundling" their billing, *i.e.*, separately billing the subparts of a single

procedure, in violation of New Jersey law and regulations.[2] (*Id.* ¶¶ 349–55). Under either of these theories, GEICO has adequately pled the five elements of common law fraud.

**(1)** GEICO has adequately alleged that there have been material misrepresentations in defendants' reimbursement claims. For instance, GEICO's complaint specifically identifies numerous claims where the Insureds were involved in relatively minor accidents — the accidents involved "low-speed, low-impact collisions, that the Insureds' vehicles were drivable following the accidents, and that no one was seriously injured in the underlying accidents, or injured at all" — and that the Insureds did not seek treatment at hospitals. (*Id.* ¶¶ 85–89). Nevertheless, defendants allegedly administered pain management injections to the Insureds (listed in Exhibit 1 and 2 to the complaint) by using anesthesia, specifically sedation, which was medically unnecessary. (*Id.* ¶¶ 308–18). The complaint also cites numerous instances in which defendants routinely billed for anesthesia services and then improperly issued a separate bill for injection of the anesthetics required for the same procedures. (*Id.* ¶ 350–55). Attached to the complaint are printouts for Advanced Health Care and Apex Anesthesia, specifically identifying particular claims, claim numbers, dates of mailing, billing codes, and dollar amounts charged. The complaint compares the billing codes to presented symptoms and finds inappropriate or suspicious patterns. Individual examples of treatment that was inappropriate in light of the diagnosis and medical history are given. (*E.g., id.* ¶¶ 136, 142–43, 193) GEICO adds that it is statistically close to impossible that these Insureds, all involved in relatively minor automobile accidents, all suffered identical injuries requiring substantially identical treatment. (*Id.* ¶¶ 166–67, 308, 352, 401).

---

[2]  Under New Jersey law, "unbundling" is disallowed: "Artificially separating or partitioning what is inherently one total Procedure into subparts that are integral to the whole for the purpose of increasing medical fees is prohibited." N.J.A.C. 11:3–29.4.

7

**(2)** GEICO has adequately pled defendants' knowledge or belief as to the falsity of these misrepresentations. Each defendant allegedly submitted nearly identical claims for multiple Insureds who were prescribed nearly identical treatments; it is statistically unlikely to the point of impossibility, GEICO alleges, that such a pattern would emerge from actual, individualized diagnosis and treatment of those Insureds. It is a reasonable inference, given those facts, that the defendants were knowingly making false claims. It is likewise inferable the defendants' submission of multiple unbundled PIP reimbursement claims was not inadvertent.

**(3)** GEICO has also alleged that defendants intended for GEICO to rely on the material misrepresentations. This is not controversial. Defendants billed the services and submitted PIP reimbursement claims to GEICO; GEICO was intended to, and did, disburse money to the defendants in payment of the claims.

GEICO has also pled that **(4)** it reasonably relied on defendants' actions and **(5)** sustained damages as a result. GEICO received and approved the claims, and paid out on them.

Therefore, GEICO has adequately pled common law fraud on the false claims and unbundling theories. Defendants' motions to dismiss Counts 5 and 10 are denied.

### ii. New Jersey Insurance Fraud Prevention Act

In Count 2, GEICO asserts a claim pursuant to the NJIFPA to recover PIP benefits paid to defendants. Count 2 alleges that defendants obtained the benefits through the fraudulent submission of false and misleading claim forms and treatment reports. (Compl. ¶¶ 415–18). Defendants move to dismiss, asserting that GEICO failed to plead with particularity any fraudulent claims for anesthesia and has not alleged that defendants were responsible for medical coding and/or billing. (DE 20 at 19–20; DE 47-1 at 18–19).

A person or practitioner violates the NJIFPA if he or she:

> (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c. 174 (C.39:6-61 *et seq.*), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
>
> (2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the Unsatisfied Claim and Judgment Fund or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c. 174 (C.39:6-61 *et seq.*), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
>
> (3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled . . . .

N.J. Stat. Ann. § 17:33A-4. The NJIFPA states that an insurance company can bring a private right of action "in any court of competent jurisdiction" to seek compensation for such fraud, including recovery of attorneys' fees. *Id.* § 17:33A-7a. If the defendant has engaged in a pattern of IFPA violations, the insurance company can seek treble damages. *Id.* § 17:33A-7b.

GEICO's allegations of false claims and impermissibly unbundled claims are actionable under the NJIFPA. The NJIFPA sweeps more broadly than common law fraud; it prohibits the submission of insurance reimbursement claims when a party knows that the claim contains false or misleading information concerning any fact or thing material to the claim, and prohibits concealment or knowing failure to disclose an event that affects the eligibility for reimbursement or the amount of the reimbursement. N.J. Stat. Ann. § 17:33A-4.

> Unlike common law fraud, proof of fraud under the IFPA does not require proof of reliance on the false statement or resultant damages, nor proof of intent to deceive. The New Jersey Supreme Court has also held that we must construe the [IFPA]'s provisions liberally to accomplish the Legislature's broad remedial goals.

9

*Lincoln Nat'l Life Ins. Co. v. Schwarz*, No. 9-cv-3361, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010) (internal citations and quotation marks omitted); *see Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1246-47 (N.J. 2006); *State v. Nasir*, 809 A.2d 796, 802-03 (N.J. Super. Ct. App. Div. 2002).

GEICO's complaint sufficiently alleges that defendants provided medically unnecessary treatment and that defendants routinely submitted claims for reimbursement that unbundled the injection of the anesthetics necessary for the anesthesia services allegedly provided.

Defendants' motions to dismiss Count 2, the NJIFPA claim, are denied.

### B. Federal RICO

GEICO alleges in Counts 4 and 9 (Compl. ¶¶ 426–34, 463–71) that defendants' alleged conduct violates the federal RICO statute, 18 U.S.C § 1962(c); *see* 18 U.S.C. § 1964 (granting civil remedies for RICO violation). The RICO enterprises are alleged to be Advanced Pain Care (Count 4) and Apex Anesthesia (Count 9), medical practices with which these defendants are affiliated.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which effect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c)); *see In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362-63 (3d Cir. 2010). To establish a claim under section 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 482-83 (1985); *see also District 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F.Supp.2d 508, 518-19 (D.N.J. 2011) (citation omitted).

The term "enterprise" includes "'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Ins. Brokerage*, 618 F.3d at

10

362-63 (citing 18 U.S.C. § 1961(4)). With respect to the pattern of racketeering activity, the statute "requires at least two acts of racketeering activity within a ten-year period," which may include federal mail fraud under 18 U.S.C. § 1341. *Id.* (citations omitted). In addition, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496.

Defendants argue that GEICO fails to state a claim for RICO violations and that the RICO allegations are not sufficiently particularized. (DE 20 at 21–22; DE 47-1 at 20–21). These arguments fail. First, GEICO alleges facts supporting predicate acts of racketeering—i.e., mail fraud in the submission of knowingly false PIP claims. Second, GEICO has pled the RICO claims with the requisite specificity. GEICO asserts its RICO claim in relation to its false claims and bundling theories of fraud. (Compl. ¶¶ 426-34, 456–62). Those, for the reasons stated above, are pled with the requisite particularity. The attachment to the complaint, in particular, lists the specific PIP claims that allegedly constitute mail fraud, the predicate act alleged under RICO. And the frauds are alleged to have been both interrelated and continuous since at least 2014. *See H.J. Inc. v. Nw. Bell Telephone Co.*, 492 U.S. 229 (1989) (addressing the requirements for a "pattern of racketeering activity," including continuity and predicate acts); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991). These allegations put defendants sufficiently on notice of the activities with which they are accused.

Many courts have permitted RICO claims under similar facts. For example, in *GEICO v. Korn*, this court permitted a RICO claim alleging mail fraud involving false insurance reimbursement claims. 310 F.R.D. 125, 129-31 (D.N.J. 2015). The plaintiffs in that case alleged that defendants exaggerated the severity of patients' injuries, overstated the amount of time doctors spent with patients, stated that "comprehensive" and "detailed" patient histories were taken when they were not, stated that "comprehensive" and "detailed" examinations were performed when they were not, and overstated the

complexity of medical decision making. *Id.*; *see also, e.g., State Farm Mutual Auto. Ins. Co. v. Radden*, No. 14-cv-13299, 2015 WL 631965, at *2 (E.D. Mich. Feb. 13, 2015) ("State Farm sufficiently states a substantive racketeering claim under RICO.... [T]he complaint describes a scheme involving a scheme involving nearly 700 acts of mail fraud involving a like number of fraudulent claims that occurred over a three year period."); *GEICO v. Gateva*, No. 12-cv-4236, 2014 WL 1330846, at *9 (E.D.N.Y. Mar. 10, 2014) (finding a RICO violations where "[p]laintiffs allege that [defendant] agreed to conduct or participate in the conduct of the RICO enterprises' affairs through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, by submitting or causing to be submitted numerous fraudulent bills seeking payment from GEICO"); *GEICO v. Esses*, No. 12-cv-4424, 2013 WL 5972481, at *7 (E.D.N.Y. Sept. 27, 2013) ("The defendants' numerous mailings of fraudulent insurance claims to [defendant] in connection with the schemes thus constitute the predicate acts of racketeering activity that establish violation of a [RICO]."). GEICO has alleged mail fraud with similar facts to *GEICO v. Korn*, and has pled fraud with specificity.

Therefore, defendants' motions to dismiss Counts 4 and 9, GEICO's federal RICO claims, are denied.

### C. Unjust enrichment

Defendants move to dismiss GEICO's claims for unjust enrichment, Counts 7 and 11 (Compl. ¶¶ 450–55, 479–84). Defendants argue that GEICO's claims for unjust enrichment fail because GEICO has not identified whether it was paid for each claim referenced in the complaint and has failed to establish that defendants directly benefitted from the alleged scheme. (DE 20 at 23; DE 47-1 at 22).

Unjust enrichment is an equitable cause of action that imposes liability when a "defendant received a benefit" and defendant's "retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J.

539, 554, 641 A.2d 519 (1994). To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege that "(1) at plaintiffs' expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011) (internal quotation and citation omitted).

GEICO's unjust enrichment claims are sufficiently alleged at this stage. The complaint asserts that (1) GEICO paid approximately $5 million in fraudulent claims; (2) that were submitted by defendants; and (3) that the claims were paid to the defendants for services that were duplicative, medically unnecessary, or not performed at all. For purposes of a motion to dismiss:

> it may be inferred that plaintiffs allege that moving defendants shared in the benefit at the expense of plaintiffs, and that the conveyance of that benefit was unjust such that equity would compel the return of the benefit from defendants to plaintiffs. At this stage of the proceedings, plaintiffs' allegations that members of the enterprise were benefitted is sufficient. If, on summary judgment, plaintiffs are unable to demonstrate that particular defendants benefitted from the scheme, dismissal of the unjust enrichment claim with regard to those defendants would be proper." Since plaintiff has adequately pleaded the necessary elements, defendants' motion to dismiss the unjust enrichment claim is denied.

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 155 (E.D.N.Y. 2005) (citing *AIU Ins. Co. v. Olmecs Medical Supply, Inc.*, 04 CV 2934ERK, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005)).

Defendants' motions to dismiss Counts 7 and 11 are denied.

### D. Service

Defendant Surace separately moves to dismiss under Rules 12(b)(4) and 12(b)(5). (DE 20 at 24). Surace asserts that GEICO attempted to serve him by leaving the complaint at the wrong address with an individual with whom he does not reside. (*Id.*).

A defendant may move to dismiss for "insufficient process" pursuant to Federal Rule 12(b)(4) or for "insufficiency of service of process" pursuant to

13

Federal Rule 12(b)(5). Overlaid upon that statute of limitations is the limitation of Fed. R. Civ. P. 4(m). Rule 4(m) requires that a summons and complaint be served within 90 days after filing, unless the period is extended for good cause by the court. "Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process. However, dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992).

Even assuming that the original service was invalid, GEICO subsequently re-served Surace. (*See* Proof of Service, DE 27). GEICO effectuated that additional service (no doubt in response to Surace's motion) on May 22, 2019. This additional service occurred 42 days after the complaint was filed and well within the 90-day time limit prescribed by Rule 4(m). The affidavit of service relates that the person serving the papers spoke to the person served face-to-face and left the papers with that person, who is said to be Dr. Surace and is physically described. (DE 27) The affidavit is regular on its face.

Dr. Surace's reply papers, however, contain a declaration (DE 36-1) stating that the affidavit of service (DE 27) "is false. I do not live at 42 Jones Street, Staten Island, New York 10314, and I was not served at that address." The brief filed by his counsel asks that the "false affidavits of service . . . be quashed." (DE 36 at 14). Dr. Surace does not state forthrightly that he was not served; rather, he objects that he does not live, and was not served, "at that address." In the case of in-person service, correct identification of a person's dwelling or usual place of abode is irrelevant.

To guard against the possibility that I have misinterpreted, however, I will refer Dr. Surace's motion to Magistrate Judge James B. Clark, III. Within 7 days, counsel shall contact Judge Clark's chambers and either (a) state in writing that Dr. Surace does not contest service, or (b) arrange for an evidentiary hearing limited to the issue of service. If the latter, the plaintiff may

14

choose to obviate a hearing by again attempting to effect service and presenting the court with further proof that the person served was in fact Dr. Surace. If so, the Magistrate Judge will entertain an informal application to excuse late service under Rule 4(m).

All parties are admonished that the Court takes a dim view of gamesmanship in connection with service of a person who is present within a judicial district of the United States and subject to service, and will shift costs in an appropriate case.

## IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss (DE 20, 47) are DENIED, except that Dr. Surace's motion to dismiss for lack of proper service is referred to Magistrate Judge James B. Clark, III.

An appropriate order accompanies this opinion.

Dated: October 29, 2019

**KEVIN MCNULTY**
**United States District Judge**